UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

VICKY SUE JONES,  Case No. 15-32931-dof
    Debtor.  Chapter 7 Proceeding
                                                /  Hon. Daniel S. Opperman

OPINION REGARDING UNITED STATES TRUSTEE'S
MOTION TO DISMISS CASE PURSUANT TO 11 U.S.C. § 707(b)(2) AND (3)

Introduction

Vicky Jones is in a difficult financial position. Although she is a registered nurse and has combined monthly income of $3,212.00, she has monthly expenses of $3,210.00, including the payment of student loans of $500.00 per month, leaving only $2.00 per month. One of her creditors has a judgment in its favor against her and started garnishing her wages, resulting in $656.00 per month taken out of her paycheck. Ms. Jones needed the protection of the automatic stay to stop this garnishment, and to that end she filed a Chapter 7 petition with this Court on December 14, 2015. Thereafter, the United States Trustee filed a Motion to Dismiss Case because the $500.00 per month[1] budgeted by Ms. Jones in her Schedule J for payment of student loans would result in a dividend of approximately 20% to all unsecured creditors if that amount was paid to all unsecured creditors in a Chapter 13 plan. If Ms. Jones converted her case to Chapter 13, however, she fears that she would not be able to apply later to certain programs giving her some relief for her student loans. Compounding her dilemma, Ms. Jones believes that she will owe approximately $37,000.00 in interest, in addition to the $27,000.00 in student loan payments, after her five year Chapter 13 plan

---

[1] This is the estimated consolidated payment of Debtor's 14 separate student loans, which currently total $993.75 per month.

1

is completed.

At the March 30, 2016, hearing, the United States Trustee and the Debtor agreed that a sufficient factual basis existed for the Court to rule as to the 11 U.S.C. § 707(b)(3) count of the United States Trustee's Motion, and the Court took the matter under advisement. In the course of deciding this matter, the question arose as to whether student loans are non-consumer debts, which would make Section 707(b)(3) inapplicable because approximately 90% of Debtor's debts are student loans.[2] Thus, the Court conducted a status conference on April 27, 2016, and thereafter required the parties to file briefs on this limited issue. The Court issues this Opinion based upon the pleadings filed to date, which include the briefs and arguments of counsel on the consumer debt issue.

Findings of Fact

The Debtor, Vicky Jones, is a registered nurse and owes approximately $131,400.00 in student loans regarding education she received to obtain that degree and license. Utilizing the means test, the Debtor's gross annual income is approximately $59,000.00. Utilizing Schedule I, her gross annual income is approximately $58,800. Per Schedule J, her expenses of $3,210.00 per month appear reasonable, other than the amount of $500.00 set aside for payment of student loans. Prior to filing her Chapter 7 bankruptcy petition, a judgment was entered against her and in favor of Bureaus Investment Group #15, LLC, which commenced garnishment of her paycheck. Per her Statement of Financial Affairs, $656.05 was garnished in August of 2015. The Debtor lists total unsecured debt of approximately $150,500.00, and of that amount $131,440 is for student loan obligations. On her Schedule J, Debtor lists payments of $500 per month on these student loans.

---

[2] The issue was raised in Debtor's Response to the United States Trustee's Motion To Dismiss (Docket #23, ¶ 4), but was not argued as a dispositive issue at the March 30, 2016, hearing.

Debtor's original Voluntary Petition filed on December 14, 2015, states in answer to Question 16 that her debts are primarily consumer debts.[3] On March 2, 2016, Debtor amended her Voluntary Petition to change her answer to this question, to state that her debts are not primarily consumer debts, but were not primarily business debts either. If neither primarily consumer or business debts, the Debtor was directed to go to Line 16c of Question 16 to "[s]tate the type of debts you owe that are not consumer debts or business debts." Debtor left this part of the question blank on her Amended Voluntary Petition. Further, on the Debtor's original Chapter 7 Means Test, Official Form 122A-2, the required calculations were performed, with the end result indicating that the presumption of abuse did not arise. On March 2, 2016, the same date the Voluntary Petition was amended, Debtor amended her means test, Form 122A-1, and filed a Statement of Exemption from Presumption of Abuse, Official Form 122A-1Supp, indicating that her debts were not primarily consumer debts.

## Positions of the Parties

At the March 30, 2016, hearing, the United States Trustee argued that the payment of the $500.00 per month to a Chapter 13 Trustee would result in an approximate 20% dividend to all unsecured creditors, as opposed to the 0% contemplated in Ms. Jones' Chapter 7 proceeding. The United States Trustee argues that the student loans should not be given preference over other unsecured creditors. Accordingly, the United States Trustee urges that this Court dismiss this case or allow the Debtor an opportunity to convert her proceeding to Chapter 13.

---

[3] Question 16 on the Official Form for the Chapter 7 Voluntary Petition states: "Are your debts primarily consumer debts? *Consumer debts* are defined in 11 U.S.C. § 101(8) as 'incurred by an individual primarily for a personal, family, or household purpose.'" If this question is answered in the negative, the debtor must state whether such debts are primarily business debts as defined by the Bankruptcy Code, and if not business debts, the debtor is required to state the type of debts that are neither consumer or business debts.

The Debtor disagrees with the assessment of the United States Trustee and argues that the conversion to a Chapter 13 proceeding will not allow her to take advantage at a later date of certain payment reduction programs available under the various student loan programs. Debtor asserts that following the United States Trustee's suggested course of action will result in the Debtor actually owing more money in deferred interest and other costs at the end of a Chapter 13 proceeding. The United States Trustee responds by pointing out that even though the Debtor may not have the full and complete relief that she wishes to have in a Chapter 13, the real issue before the Court is whether the case should be dismissed, with the full realization that bankruptcy relief is not available for all individuals.

Finally, the United States Trustee points to the fact that the Debtor has not presented any evidence that she sought the right to pay her judgment creditor, by installments, as allowed under Michigan law.

On the issue of whether student loan debt constitutes consumer debt for purposes of Section 707(b), the United States Trustee argues that Debtor's student loan debt should be considered to be consumer debt, making Section 707(b) applicable, and under the totality of the circumstances, dismissal of her case is appropriate. Debtor argues that her student loan debt is not consumer debt and because the overwhelming majority of her debt consists of student loans, Section 707(b) is inapplicable. Even if applicable, Debtor argues that the totality of the circumstances do not support a finding of substantial abuse and a resulting dismissal of her Chapter 7 case.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters

4

concerning the administration of the estate).

All issues before the Court arise under Title 11 of the United States Code and are therefore within this Court's jurisdiction.

Applicable Statutes and Authorities

A.  Whether Student Loan Debt Constitutes Consumer Debt for Analysis Under Section 707(b)

The determination of whether a debt constitutes a consumer debt starts with the definition given this term in the Bankruptcy Code. The term "consumer debt" is defined in 11 U.S.C. § 108(8) as a "debt incurred by an individual primarily for a personal, family, or household purpose." Courts that have examined this issue focus on the purpose for which the debt was incurred, and when a debt is incurred for more than one purpose, the primary purpose of the debt will determine whether or not the debt is a consumer debt. *Stewart v. United States Trustee (In re Stewart)*, 215 B.R. 456, 465 (B.A.P. 10th Cir. 1997). In *Stewart*, the Bankruptcy Appellate Panel for the Tenth Circuit first determined that student loans are not consumer debts per se, finding that the primary purpose for which the student loan debt was incurred is a fact determinative issue, that must be examined on a case-by-case basis. *Id*. For example, the *Stewart* Court noted that "[t]here may be circumstances in which the debtor can demonstrate that the student loan was incurred purely or primarily as a business investment, albeit an investment in herself or himself, much like a loan incurred for a new business." *Id*. On the other hand, student loans may be consumer debts when is often the case when the loans are incurred for the purpose of supporting one personally or supporting one's family. *Id*. *See also In re Rucker*, 454 B.R. 554, 558 (Bankr. M.D. Ga. 2011) (Section 108(8), defining "consumer debt" defines consumer debt according to its purpose, which requires an examination into all facts to determine this purpose). The *Rucker* Court cited a decision from the Sixth Circuit Court

5

of Appeals, *Internal Rev. Serv. v. Westberry (In re Westberry)*, 215 F.3d 589 (6th Cir. 2000), which had before it the issue of whether a tax debt constituted a "consumer debt" for purposes of 11 U.S.C. § 1301(a), which subsection stays efforts to collect "a consumer debt" from a co-debtor. The *Westberry* Court determined that a tax debt is not a "consumer debt" for purposes of Section 1301(a) because it is involuntary incurred for a public, rather than personal purpose, which does not result from consumption, but earning activity, and which does not involve the extension of credit. *Westberry*, 215 F.3d at 590-91.

B.   <u>Judicial Estoppel</u>

"Judicial estoppel is an equitable doctrine that preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Teledyne Indus., Inc. v. N.L.R.B.*, 911 F.2d 1214, 1217-18 (6th Cir. 1990) (citation omitted). "Judicial estoppel, however, should be applied with caution to avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement." *Eubanks v. CBSK Fin. Group, Inc.*, 385 F.3d 894, 897 (6th Cir. 2004), *quoted in White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476 (6th Cir. 2010).

"In order to invoke judicial estoppel a party must show [I] that the opponent took a contrary position under oath in a prior proceeding and [ii] that the prior position was accepted by the court." *Teledyne Indus.*, 911 F.2d at 1218; *see also Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002). A third factor courts have examined is whether the "'conduct amount[s] to nothing more than mistake or inadvertence.'" *White,* 617 F.3d at 476 (quoting *Browning*, 283 F.3d at 776).

> [W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him. This rule,

known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.

Although we have not had occasion to discuss the doctrine elaborately, other courts have uniformly recognized that its purpose is to protect the integrity of the judicial process, by prohibiting parties from deliberately changing positions according to the exigencies of the moment. Because the rule is intended to prevent improper use of judicial machinery, judicial estoppel is an equitable doctrine invoked by a court at its discretion.

. . . [S]everal factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts.

*New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001) (internal quotation marks and citations omitted); *see also Carroll v. United Compucred Collections, Inc.*, 399 F.3d 620, 624 (6th Cir. 2005) (relying on *New Hampshire v. Maine* and noting that "the second factor-that a court accepted the party's initial position-appears to be significant").

The Sixth Circuit Court of Appeals has examined the following circumstances in determining whether the conduct was the result of mistake or inadvertence, which may result in the application of judicial estoppel being inappropriate: (1) "the debtor lacks knowledge of the factual basis of the undisclosed claims"; (2) "the debtor has no motive for concealment"; and (3) "the absence of bad faith." *White*, 617 F.3d at 476 (citing *Browning*, 283 F.3d at 776).

7

C.  "Substantial Abuse" under Section 707(b)(3)

A bankruptcy court may dismiss a Chapter 7 case where the debts are primarily consumer debts if the court finds that granting a discharge would be a "substantial abuse" of the Bankruptcy Code. Section 707(b)(1) and (3) of the Bankruptcy Code provides:

> (1) After notice and a hearing, the court, on its own motion or on a motion by the United States Trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be an abuse of the provisions of this chapter. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).
>
> ****
>
> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(I) of such paragraph does not arise or is rebutted, the court shall consider–
> (A) whether the debtor filed the petition in bad faith; or
> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

Once it has been determined the debts are primarily consumer debts, to determine whether to dismiss a case under Section 707(b), the court must look to the totality of the circumstances. *In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989). Substantial abuse can be shown either 1) where the debtor has acted dishonestly, or 2) where the debtor is not needy, i.e. his financial situation does not warrant a discharge in exchange for the liquidation of his assets. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429 (6th Cir. 2004).

In determining whether a debtor is needy, the court should decide whether the debtor could pay her debts out of future earnings, i.e., whether the debtor could fund a hypothetical Chapter 13

8

plan. This factor alone may compel a dismissal of the case. *Id*. Other factors which may show neediness or a lack thereof include:

    1) whether the debtor enjoys a stable source of income;

    2) whether he is eligible for adjustment of his debts through Chapter 13;

    3) whether there are state remedies with the potential to ease his financial problems;

    4) the degree of relief obtainable through private negotiations; and

    5) whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter, and other necessities.

*Krohn,* 886 F.2d at 126-27.

For example, in *Krohn*, the Sixth Circuit affirmed the bankruptcy court's dismissal of a debtor's case for substantial abuse, finding that the debtor consistently lived on credit and beyond his means. The court found that the Section 707(b) statutory preference in favor of granting relief was inappropriate under the totality of the circumstances of that case. Krohn's income was $4,015 per month and his expenses were $3,950. Even after filing his Chapter 7 petition, the debtor continued to spend excessively; his post petition expenses for a three month period included $1,065 for dining out, lunch and recreation (in excess of the $355 he was spending on groceries), $169 for cosmetics, and $66 for cigars. He had ample future income and his financial situation was not the result of any unforeseen event or catastrophe. Based on these facts, the Sixth Circuit affirmed the bankruptcy court's dismissal of the case for substantial abuse under Section 707(b). *Id*. at 127-28.

## Analysis

Under the primary purpose test and the liberal standard generally used for determining whether student loans are considered consumer debts, it may very well be that Debtor's debts are not primarily consumer debts, thus making Section 707(b) inapplicable. In analyzing whether this

prerequisite is met, the Court first determines that it need not analyze the issue of primary purpose of Debtor's student loans, because it concludes that Debtor should be judicially estopped from asserting her debts are not primarily consumer debts.

Debtor's filings in this case present a classic fact sequence for application of judicial estoppel. Debtor's original Voluntary Petition and Chapter 7 Means Test declared under penalty of perjury that her statements were true and correct that her debts were primarily consumer debts. Debtor amended both the Voluntary Petition and the Chapter 7 Means Test on March 2, 2016, shortly after the United States Trustee filed its Motion To Dismiss on February 29, 2016, to take a contrary position that her debts were not consumer debts. The Court and the United States Trustee accepted and relied upon Debtor's original position in this regard. There was no explanation given for the timing of these amendments other than Debtor's response to Paragraph 4 of the United States Trustee's Motion:

> Debtor denies the statements in paragraph four and has corrected her petition accordingly. The majority of Debtor's obligations are student loans, which were not incurred for household goods. These debts were incurred in an attempt to increase debtor's income, making them non-consumer debts.

(Debtor's Response, Docket No. 23, ¶ 4).

Thus, there is no explanation offered for, nor can there be a finding of "mistake or inadvertence" for this change in positions, the timing of which exhibits the "gamesmanship" prohibited under the equitable doctrine of judicial estoppel. The Court concludes it cannot condone what clearly appears to be a deliberate change in positions taken by Debtor in direct response to the United States Trustee's Motion To Dismiss, with what the Court concludes was done with the obvious motive of attempting to make Section 707(b) inapplicable.

Because Section 707(b) applies to this Debtor, the Court next turns its analysis to whether Debtor's Chapter 7 case should be dismissed under the totality of the circumstances for substantial

abuse. Ms. Jones is not like the debtor in *Krohn*. There is no evidence before the Court that she has incurred extravagant expenses or leads a lavish lifestyle. In fact, after payment of her student loans, the Debtor has little, if any, money leftover.

After this overview, the application of the specific elements set forth in *Krohn* lead to the following analysis. First, the Debtor enjoys a stable source of income as a registered nurse employed at a local hospital. Her debts clearly fall within the amounts for adjustment in a Chapter 13 proceeding and, as argued by the United States Trustee, would allow for the repayment of approximately 20% to all unsecured creditors, including her student loans. Thus, the first and second factors weigh in favor of the United States Trustee. As to the third and fourth elements, the record is devoid of whether the Debtor has attempted to negotiate a repayment of her judgment in installments as allowed under Michigan law or attempted to adjust her student loan payments, as suggested by her counsel after she receives a Chapter 7 discharge. These two factors weigh heavily in favor of the United States Trustee and against the Debtor. Finally, as to the fifth factor, the Court sees no evidence that the Debtor's expenses can be reduced significantly, especially as it appears with this record that the Debtor is working very hard to repay her obligations and still live a modest lifestyle.

Applying the *Krohn* factors, the Court concludes it is premature for the Debtor to seek either Chapter 7 or Chapter 13 relief at this time. First, she could obtain a temporary stay of proceedings while she attempts to negotiate an installment payment of the judgment that she owes. Second, there is insufficient evidence before the Court that she cannot accomplish a debt restructuring of her student loans at this time. Applying the *Krohn* factors to this case, while the Debtor's circumstances are not nearly as outrageous as those in *Krohn*, the application of the *Krohn* factors lead this Court to conclude that the United States Trustee's Motion to Dismiss should be granted and the case

dismissed after the Debtor is afforded an opportunity to consider whether she wishes to convert her proceeding to Chapter 13. The Court allows the Debtor 21 days to file a pleading requesting conversion to Chapter 13. Otherwise, the Court will dismiss this case.

The United States Trustee is requested to submit an order consistent with this Opinion and the presentment of order procedures of this Court.

**Signed on August 24, 2016**

                                              **/s/ Daniel S. Opperman**
                                     **Daniel S. Opperman**
                                     **United States Bankruptcy Judge**